IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TURNER NETWORK SALES, INC.,       ) <br>                                              ) <br>       *Plaintiff*,                     ) <br>                                              ) <br>       *v.*                              ) <br>                                              ) <br> DISH NETWORK L.L.C.,                 ) <br>                                              ) <br>       *Defendant.*              ) <br>                                              ) | Civil Action No. 17-CV-7599 (RA) |

**MEMORANDUM IN SUPPORT OF MOTION TO STRIKE
PARAGRAPHS 9-14 OF THE DECLARATION OF DAVID SHULL**

Plaintiff Turner Network Sales, Inc. ("TNS") hereby files this Memorandum in Support of its Motion to Strike Paragraphs 9-14 of the Declaration of David Shull, which seeks an order pursuant to Federal Rules of Civil Procedure 56(c)(4) and 37(c)(1) striking Paragraphs 9-14 of the Declaration of David Shull dated December 3, 2018 (the "Shull Declaration") from the record and precluding Mr. Shull from providing testimony regarding any of the subjects addressed in Paragraphs 9-14 of the Shull Declaration.[1]

**FACTUAL BACKGROUND**

On December 1, 2017, Defendant DISH Network L.L.C. ("DISH") served its initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1), in which it listed individuals likely to have discoverable information that DISH may use to support its claims. One of the numerous individuals listed in DISH's initial disclosures was David Shull, whom DISH described in its disclosures as follows:

> **David Shull.** Mr. Shull may be contacted through DISH's counsel. He is no longer employed by DISH but was DISH's Senior Vice President of Content Acquisition

---

[1] Prior to filing its motion and memorandum, counsel for TNS conferred by telephone with counsel for DISH, who indicated that DISH opposes TNS's request for relief.

and Programming.  The subjects of his testimony may include, among others, the negotiation, interpretation, and performance under the 2009 Agreement.

(*See* Reply Decl. of Alan W. Bakowski dated December 21, 2018 ("Bakowski Reply Decl."), Ex. 2 at 5.)  On March 9, 2018, DISH served amended initial disclosures, but DISH did not change its description of any potential testimony from Mr. Shull.

Following DISH's initial disclosures, TNS served its first interrogatories, which among other things requested that DISH specifically identify those persons who had knowledge and/or involvement in DISH's decisions concerning payment for CNN during the terms of the 2009 and 2015 Agreements.  Those interrogatories requested the following specific information from DISH:

> 1.      Please identify each person who had knowledge of DISH's decision to calculate and pay license fees for the distribution of the CNN Service on its DBS System by multiplying the rates specified for CNN by the number of Total Subscribers rather than the number of CNN Subscribers during the terms of the 2009 Agreement and 2015 Agreement.
>
> 2.      Please identify each person who was involved in DISH's decision to calculate and pay license fees for the distribution of the CNN Service on its DBS System by multiplying the rates specified for CNN by the number of Total Subscribers rather than the number of CNN Subscribers during the terms of the 2009 Agreement and 2015 Agreement, including a brief description of each such person's involvement.

(*See* Declaration of Alan W. Bakowski dated October 18, 2018, Ex. 1 at 2-3.)  In its initial responses to these interrogatories, DISH stated that "after a diligent search, it has not identified anyone who has knowledge of when, how or who made the decision to pay on the basis of Total Subscribers."  (*Id.* at 3.)  DISH further responded by stating that, "to the extent this Interrogatory seeks the names of persons who, through their positions at DISH . . . were aware that DISH was paying on the basis of the number of Total Subscribers rather than the number of CNN Subscribers," DISH was identifying nine individuals whom it said "were aware that DISH

calculated and paid license fees for the distribution of the CNN Service based on the number of Total Subscribers rather than the number of CNN Subscribers." (*Id.* at 3.)  DISH **did not list** David Shull as a person with knowledge concerning DISH's method of payment for CNN.  (*See id.*)  These interrogatory responses were verified by DISH Senior Vice President of Programming Andrew LeCuyer.  (*See id.* at 8.)

Shortly before the close of fact discovery, on August 3, 2018, DISH served supplemental interrogatory responses to TNS's first interrogatories.  (*See* Bakowski Reply Decl., Ex. 1.)  In those responses, DISH reaffirmed that "after a diligent search, it has not identified anyone who has knowledge of when, how, or who made the decision to pay for CNN on any basis other than CNN Subscribers."  (*Id.* at 3.)  DISH then stated that, "to the extent this Interrogatory seeks the names of persons who, through their positions at DISH were aware of DISH's payments for CNN on the DBS System," DISH was identifying the same nine individuals listed in its original interrogatory responses as persons who "were aware of how DISH calculated and paid license fees for the distribution of the CNN Service." (*Id.*)  Again, Mr. Shull **was not listed** among those names, although another former DISH employee—Carolyn Crawford—was.  Andrew LeCuyer again verified these interrogatory responses.  (*Id.* at 6.)

On December 3, 2018, DISH filed the Shull Declaration in connection with its opposition to TNS's motion for summary judgment.  In paragraphs 9 through 11 of the Shull Declaration, Mr. Shull provides statements concerning DISH's payment of license fees for CNN during the term of the 2009 Agreement.  In paragraphs 12 through 14 of the Shull Declaration, Mr. Shull provides statements relating to executive positions he held with the parent company of The Weather Channel after he left DISH.

**ARGUMENT**

The Court should strike paragraphs 9 through 14 of the Shull Declaration from the record and preclude Mr. Shull from providing any testimony relating to DISH's payment of license fees for CNN or his experience as an executive with The Weather Channel.  Mr. Shull should not be allowed to provide such testimony because his statements lack foundation and because DISH not only failed to disclose this potential testimony during fact discovery but also confirmed that Mr. Shull has no knowledge concerning DISH's payment of license fees for CNN.

**I.     The Court Should Strike Paragraphs 9-11 of the Shull Declaration Because They Contain Statements That Are Not Based on Mr. Shull's Personal Knowledge and Mr. Shull Is Not Competent to Testify on These Matters**

Federal Rule of Civil Procedure 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  The Court may strike parts of a declaration that do not satisfy this requirement.  *ECD Inv'r Grp. v. Credit Suisse Int'l*, No. 14-CV-08486, 2017 U.S. Dist. LEXIS 138066, at *6-8 (S.D.N.Y. Aug. 28, 2017) (citing *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999)); *Davis v. Peake*, No. 08 CIV. 3570, 2011 U.S. Dist. LEXIS 107380, at *7-11 (S.D.N.Y. Sept. 22, 2011); *see, e.g.*, *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1994) (finding that affidavit that was not based on personal knowledge did not create an issue of fact).

In paragraphs 9-11 of his declaration, Mr. Shull makes a number of statements that do not satisfy Rule 56(c)(4).  Specifically, he declares:

- "During the term of the 2009 Agreement, DISH paid on a number of subscribers that was less than its 'Total Subscribers' as defined under the 2009 Agreement.  DISH paid on a number of subscribers less than its 'Total Subscribers' because it determined that there

- was no 'other 24-hour per day national news service' that was penetrated more highly than CNN." (Shull Decl. ¶ 9.)

- "During my tenure at DISH, neither I, nor to my knowledge did anyone consider The Weather Channel to constitute an 'other 24-hour per day national news service' under the 2009 Agreement." (*Id.* ¶ 10.)

- "I understand that representations have been made in this case to suggest that a DISH employee named Carolyn Crawford interpreted The Weather Channel as a news channel and accordingly authorized DISH payment based on total subscribers. I have no recollection of any such interpretation made by Carolyn Crawford." (*Id.* ¶ 11.)

Nowhere in his declaration does Mr. Shull establish or even claim that he has personal knowledge concerning the manner in which DISH paid license fees for CNN during the term of the 2009 Agreement or the reasons why DISH made its payment decisions. Nor does Mr. Shull's description of his job at DISH suggest that Mr. Shull has personal knowledge as to these matters. Mr. Shull states that as Senior Vice President of programming at DISH, he was "responsible for negotiating carriage agreements for the acquisition of content rights from content producers." (Shull Decl. ¶ 4.) Mr. Shull does not claim that his duties included deciding how DISH should pay for CNN or determining whether any 24-hour per day national news service was more highly penetrated than CNN. Any implication that Mr. Shull has personal knowledge of these matters is expressly contradicted by DISH's admissions in this litigation. Specifically, in its responses to TNS's first interrogatories, DISH stated that it had conducted "a diligent search" and failed to identify *anyone* who had knowledge as to the reasons for DISH's payment practices during the 2009 Agreement. (Bakowski Reply Decl., Ex. 1 at 3.) Then DISH expressly *omitted* Mr. Shull's name from the extensive list of individuals whom DISH disclosed as having knowledge concerning DISH's payments of license fees for CNN. (*See id.*) Because Mr. Shull is not competent to testify about the matters described in paragraphs 9-11 of his declaration and DISH has admitted that Mr. Shull does not have knowledge of these matters, the Court should strike

those paragraphs and not consider them in connection with TNS's motion for summary judgment. Additionally, as further explained below, the Court should preclude Mr. Shull from providing testimony concerning these subjects because this potential testimony was not disclosed in DISH's discovery responses.

### II. The Court Should Strike Paragraphs 9-14 of the Shull Declaration and Preclude Mr. Shull from Testifying on Those Subjects Because DISH Did Not Disclose the Subjects of This Testimony During Fact Discovery

Rule 26(a) requires that parties serve initial disclosures containing "the name and, if known, the address and telephone number of each individual likely to have discoverable information—*along with the subjects of that information*—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added). Those disclosures must be supplemented "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party *is not allowed to use that information or witness* to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). The purpose of the rule is to prevent a party from "sandbagging" its opponent with new evidence, and courts apply the rule in the context of declarations submitted at summary judgment. *See Fleming v. Verizon N.Y., Inc.*, No. 03 Civ. 5639, 2006 U.S. Dist. LEXIS 86832, at *22 (S.D.N.Y. Sept. 22, 2006) (citing *Ventra v. United States*, 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000)). Courts have recognized that preclusion is appropriate when a party offers testimony from a witness on a subject matter that is different than that disclosed in its initial

disclosures or its discovery responses.  *See, e.g.*, *Official Comm. of Unsecured Creditors v. Hendricks*, Case No. 1:04-cv-066, 2008 U.S. Dist. LEXIS 116318, at *4-5 (S.D. Ohio Aug 1, 2008) (striking portions of declaration addressing different topics than the subject matter disclosed by party in initial disclosures and discovery responses).

      As explained above, after DISH served its initial disclosures, TNS served interrogatories to determine, among other things, those individuals who had any knowledge or involvement in DISH's decisions concerning the license fees that it paid for CNN during the 2009 and 2015 Agreements.  DISH stated in its interrogatory responses served near the end of fact discovery that, after "a diligent search," it could not identify "anyone who has knowledge of when, how, or who made the decision to pay for CNN on any basis other than CNN Subscribers."  (Bakowski Reply Decl., Ex. 1 at 3.)  DISH then proceeded to identify nine individuals other than Mr. Shull—including some former DISH employees—whom it believed were "aware" of DISH's payments of license fees for CNN.  (*Id.*)  DISH cannot admit in its interrogatory responses that it conducted a diligent search and determined that Mr. Shull was not one of the individuals with knowledge of DISH's payment practices and then attempt to present him as a witness on that subject.  The statements in paragraphs 9-11 of the Shull Declaration go far beyond the limited scope of potential testimony disclosed by DISH during fact discovery and should be stricken.

      Similarly, the testimony that DISH seeks to introduce in paragraphs 12-14 of the Shull Declaration goes far beyond the limited topics that DISH disclosed for Mr. Shull in its initial disclosures.  Paragraphs 12-14 of the Shull Declaration discuss Mr. Shull's tenure "as Chief Executive Officer of The Weather Channel" and his opinions concerning the nature of The Weather Channel's programming during that time.  (*See* Shull Decl. ¶¶ 12-14.)  But DISH never informed TNS that Mr. Shull might offer testimony relating to his tenure with The Weather

Channel, when he was no longer a DISH employee. To the contrary, DISH limited the description of Mr. Shull's potential testimony to "the negotiation, interpretation, and performance under the 2009 Agreement." (Bakowski Reply Decl., Ex. 2 at 3.) The 2009 Agreement expired in March 2015, before Mr. Shull even joined The Weather Channel. Mr. Shull's statements in Paragraphs 12-14 are completely unrelated to "the negotiation, interpretation, and performance under the 2009 Agreement."

TNS will be prejudiced if Mr. Shull is permitted to provide testimony concerning the subjects addressed in paragraphs 9-14 of his declaration. TNS did not seek to depose Mr. Shull because TNS understood that the scope of Mr. Shull's potential testimony would be limited to the negotiation, interpretation, and performance of the 2009 Agreement—issues that involved Mr. Shull's employment at DISH and that were addressed by numerous other DISH witnesses whom DISH specifically identified in its interrogatory responses and whom TNS deposed individually and/or through depositions of DISH taken under Rule 30(b)(6). Additionally, because of DISH's interrogatory responses, TNS understood that Mr. Shull would not provide any testimony concerning DISH's decisions regarding license fee payments for CNN. If DISH had disclosed during the fact discovery period that Mr. Shull might testify concerning the nature of The Weather Channel's programming, its competition for viewership, Mr. Shull's experience as an executive with The Weather Channel's parent company, or DISH's license fee payments for CNN, TNS could have sought additional discovery and responded in other ways. However, DISH did not reveal that it planned to present Mr. Shull's testimony on any of these topics until it served the Shull Declaration in connection with its summary judgment opposition papers on December 3, 2018, long after fact discovery expired. DISH should not be permitted to sandbag TNS with this new purported evidence at this late stage of the litigation.

As TNS explains in its reply brief in support of summary judgment, TNS does not believe that any of the statements in Mr. Shull's declaration create any material issues of fact for trial. Nevertheless, TNS is prejudiced by having to address Mr. Shull's testimony in connection with its motion for summary judgment and will be prejudiced if it has to address this testimony in subsequent proceedings in this case. Accordingly, the Court should preclude Mr. Shull from testifying on the topics addressed in paragraphs 9-14 of his declaration and strike those paragraphs from the record.

## CONCLUSION

For the reasons discussed above, TNS respectfully requests that the Court grant its Motion to Strike Paragraphs 9-14 of the Declaration of David Shull.

Respectfully submitted, this 24th day of December, 2018.

*[signature]*

James A. Lamberth *(admitted Pro Hac Vice)*
james.lamberth@troutmansanders.com
Alan W. Bakowski *(admitted Pro Hac Vice)*
alan.bakowski@troutmansanders.com

TROUTMAN SANDERS LLP
600 Peachtree Street, N.E., Suite 5200
Atlanta, Georgia 30308-2256
(404) 885-3000 (voice)

Stephen G. Rinehart
Stephen.Rinehart@troutmansanders.com

TROUTMAN SANDERS LLP
875 Third Avenue
New York, NY  10022
(212) 704-6000

***Attorneys for Plaintiff***
***Turner Network Sales, Inc.***